**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LINDA JO SHOE COMPANY, Respondent.**

No. 18772.

United States Court of Appeals Fifth Circuit.

Aug. 7, 1962.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, Earle W. Putnam, Trial Atty., N. L. R. B., Washington, D. C., Stuart Rothman, Gen. Counsel, Samuel M. Singer, Abraham A. Dash, Attorneys, National Labor Relations Board, for petitioner.

Harold E. Mueller, Mueller & Mueller, Karl H. Mueller, Fort Worth, Tex., for respondent.

Before JONES, BROWN and GEWIN, Circuit Judges.

JONES, Circuit Judge.

The respondent, Linda Jo Shoe Company, is a manufacturer of shoes at Gainesville, Texas. It had, during the time here pertinent, about 550 employees of whom about 500 were production employees. In July of 1959 the Retail, Wholesale and Department Store Union, AFL-CIO, on whose complaint this proceeding was initiated, began to organize the employees of Linda Jo. Some representatives of the union met on July 18th with a few of Linda Jo's employees to whom union application cards were given for distribution among the company's employees. A second meeting was held on July 22nd, attended by those who had participated in the first meeting, for the purpose of seeing how many cards had been procured and how the employees had reacted to the union effort. During this period Jack Silven, President of Linda Jo, called a meeting of the employees. One of the employees fixed the date as July 20th, Silven said it was during the last three or four days of July. The complaint, signed by the Regional Director of National Labor Relations Board, fixed the date as on or about July 29th, 1959. The exact date is probably immaterial. At the meeting Silven made a brief talk which he concluded by saying, according to his testimony, "that there was a company rule that no material of any kind would be distributed on company premises or inside the factory during working hours subject to dismissal." Other witnesses omitted the reference to "during working hours" in their testimony as to what Silven had said. Shortly thereafter the Company bulletin boards had posted upon them the following:

"NOTICE

"All employees are warned that it is against company rules to solicit or distribute literature of any kind upon these premises. Any person doing so will be subject to instant dismissal."

The Board found that the Company violated Section 8(a) (1) of the Labor Management Relations Act, 29 U.S.C.A. § 151 et seq. It entered an order, of which it here seeks enforcement, finding that the Company's rule violated the Act in so far as it prohibited union solicitation by employees during non-working time within the Company's premises, and directing the Company to cease and desist from:

"(a) Discouraging membership in Retail, Wholesale, and Department Store Union, AFL-CIO, or any other labor organization of its employees, by discriminating in regard to the hire and tenure of their employment or any term or condition of employment;

"(b) Maintaining a rule broadly prohibiting its employees from engaging in solicitation and other union activities on company premises during their nonworking time;

"(c) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right of self-organization, to form labor organizations, to join or assist the above-named or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in any other concerted activity for the purpose of collective bargaining or other mutual aid or protection or to refrain from any and all such activities." Linda Jo Shoe Company, 129 N.L. R.B. 179.

Christine Arterburn was an employee of the Company with four and a half years' service. She had worked at several different jobs in the Company's factory. For the past year and a half her assignment had been to apply cement to crepe soles in the process of affixing them to the uppers. Arterburn was one of few employees who attended the meetings of July 18th and July 22nd. She distributed fifteen or twenty union cards to other employees as well as signing one

0

herself. On July 30, 1959, Arterburn was discharged. The Board found that her discharge was because of her union membership and activity and in violation of Section 8(a) (3) and (1) of the Act. By its order the Board directed that she be offered reinstatement and made whole for any loss suffered by reason of her wrongful discharge. Enforcement is sought by the Board.

██ Rules which prohibit union solicitation or the distribution of literature by employees during non-work time are held to be unlawful interference with the employees' rights under Section 7 of the Act unless it is made to appear that special circumstances make the rule necessary to maintain production or discipline. Republic Aviation Corporation v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372; N. L. R. B. v. Great Atlantic & Pacific Tea Co., 5th Cir. 1960, 277 F.2d 759; Peyton Packing, 49 N.L.R.B. 828, enf'd 5th Cir. 1944, 142 F.2d 1009. The respondent argues that its rule was not intended to be applicable to solicitation during non-work time in non-work areas of its factory, but the Board found that the rule was not so limited in its applicability. It cannot be held that this finding is unsupported. The rule as posted contained no such limitation, and there is conflicting testimony concerning the statement of the rule made by Silven when he addressed the employees. Likewise the finding that the purpose of the rule was to frustrate organizational efforts is supported by substantial evidence. The timing of Silven's speech and the posting of the rule following closely the initiation of organizational activities, suggest that the rule was designed to accomplish objectives other than preventing the disruption of production. Whether a particular rule would be violative of the order need not be considered. The portion of the Board's order quoted above is proper and should be enforced.

██ Linda Jo urges with much force that Miss Arterburn had been doing poor work and that her discharge was justified for that reason. As to this, however, there was considerable conflict in the testimony. But if the discharge is because of union activity it is a violation of the Act even though a valid ground for dismissal might exist. Miss Arterburn testified that her foreman told her she was to be discharged because the production superintendent had found out that she was working for the union. She testified that the production superintendent told her, in discharging her, that "anybody seen working with these union men or going to the meetings or anything, they were going to be fired." In light of this and other testimony, we cannot say that the finding of a discriminatory discharge is unsupported by evidence on the record as a whole. The Board's order, directing reinstatement with compensation for any loss suffered by her discharge, is entitled to enforcement.

The Board's order will be

Enforced.