NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SOUTHWIRE COMPANY, Respondent.

No. 21784.

United States Court of Appeals
Fifth Circuit.

Nov. 1, 1965.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Solomon I. Hirsh, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Theodore J. Martineau, Attorney, N. L. R. B., for petitioner.

Frank M. Swift and Smith, Swift, Currie, McGhee & Hancock, Atlanta, Ga., for respondent.

Before TUTTLE, Chief Judge, and BELL and COLEMAN, Circuit Judges.

TUTTLE, Chief Judge.

By this petition the Labor Board seeks enforcement of its order, which found that the respondent violated Section 8(a) (1), N.L.R.A. by promulgating an illegally broad rule barring solicitation and by publishing a coercive threat in its handbook for employees, and that the Company violated Section 8(a) (3) and (1), by discharging five employees because of union activities, and further, that the Company violated Section 8(a) (1) by unlawfully interrogating two employees.

As background, it is relevant to note that the Board had previously held that this respondent had violated Section 8(a) (3) and (1) of the Act by discriminatorily discharging five employees and had violated Section 8(a) (1) by engaging in instances of unlawful interrogation. This prior finding was affirmed by this Court which ordered enforcement in N. L. R. B. v. Southwire Company, 5 Cir., 313 F.2d 638. Subsequently, the Board also found a violation of Section 8(a) (3) and (1) of the Act in the discharge of another employee because of union activities. The events that brought about the present unfair labor practice charges occurred in 1962 during an organization campaign conducted by the International Union of Electrical Radio and Machine Workers, AFL-CIO.

A booklet distributed by the Company among its employees contained, among other things, a list of rules designed to bar activity involving solicitation and distribution in the plant. Under the heading, "No Solicitations," this rule provides as follows:

"No employee or any other person shall be permitted to solicit or promote subscriptions, pledges, memberships, or other types of support or co-operation for any drives, campaigns, causes, churches, corporations, individuals, or organizations, or to collect money for work purposes on company property. The distribution or circulation of leaflets, pamphlets, circulars or other literature are considered promotions within the meaning of this section and are not permitted.

"This is not intended to prevent or prohibit personal discussion among employees on any subject during non-working time."

Elsewhere, on a different page in the booklet, is the following language under a heading called, "Statement on Unionism":

"No person will be allowed to solicit or carry on union or organizing activities on the job. Anybody who does so and who thereby neglects his own work or interferes with his or the work of others will be subject to discharge."

At a different place, under the policy declaration, "Statement on Unionism," is the following language:

"We are convinced that wherever there are unions there is trouble,

strife and discord and that a union would not work to our employees' benefit but to their serious harm. In view of this, it is our positive intention to oppose unionism by every proper means."

Upon the hearing before the trial examiner, a showing was made to the effect that a part of the language in the Statement on Unionism had been changed in later editions of the company's booklet. The language now in use is as follows:

"We are convinced that wherever there are unions there is trouble, strife and discord and that a union would not work to our employees' benefit. In view of this it is our positive intention to oppose unionism by every proper and legal means."

■ Dealing first with the charge that the No Solicitation rule of the company violated Section 8(a) (1) of the Act, we conclude that the Board's findings in this respect are correct. It seems clear that a fair reading of this rule would cause an employee to believe that it was a violation of the company's policy for him to do any of the forbidden things at any time at any place on the company's property, for this is exactly what the first sentence says. The fact that this is modified by another paragraph that says, "This is not intended to prevent or prohibit personal discussion among employees on any subject during non-working time," does not have the effect of enlarging the privilege of soliciting or promoting subscriptions during non-working time on the company's property. So construed, this rule is too broad and is violative of Section 8(a) (1) of the Act. Republic Aviation Corporation v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 557; N. L. R. B. v. Walton Manufacturing Co., 5 Cir., 289 F.2d 177, 180; N. L. R. B. v. Linda Joe Shoe Co., 5 Cir., 307 F.2d 355, 357. The respondent made no attempt to prove special circumstances which would warrant such a broad No Solicitation rule. Cf. N. L. R. B. v. Babcock & Wilcox Co., 351 U.S. 105, 112, 113, 76 S.Ct. 679, 100 L.Ed. 975.

■■ Turning next to the Board's criticism that the Company's statement that it is convinced that "wherever there are unions there is trouble, strife and discord," and that a union would work to their employees' serious harm, amounts to a coercive threat, we conclude that the Board reads too much into this language. This respondent seeks to leave no one in doubt of its opposition to unionization of its plant. This it has a right to do, so long as it does so in a fair presentation of its views. We need not decide whether the language used is in the nature of a "prediction," cf. N. L. R. B. v. Transport Clearings, Inc., 5 Cir., 311 F.2d 519, 524, or a threat of conduct by the company that it would itself be responsible for causing the employees "serious harm," if they should choose the union. Respondent has, wisely we think, eliminated this critical language. Under these circumstances we think it not necessary to enforce this part of the Board's order by an injunction.

■ We deal next with the discharges of five employees, four of whom were frankly discharged by the Company because of their violation of the No Solicitation rule. In each case the violation was slight, and in each case the Board found that the so-called solicitation of union membership occurred at a time when the employee was not on company time, and under circumstances where the employee's work was not interfered with. As we must, in these circumstances, in the absence of a determination that there is no substantial evidence on the record to support the findings, we affirm the Board's findings relative to the circumstances surrounding these acts of the four employees. Upon this determination, it follows that the discharge of these employees for violation of any invalid rule can not be supported, and the Board's determination that they were discharged for purposes of discriminating against them as members of the union, must be affirmed.

■ Next, as to the fifth discharge, we find a much closer question arising. The employee, Walker, placed three hand-

written notices about the union on company bulletin boards. This was in violation of a valid company rule, for the violation of which the rule provided a penalty less than a discharge. The company representative, Martin, questioned Walker whether he had caused the notices to be placed on the bulletin board and Walker denied that he had done so. Having proved to his own satisfaction, by a handwriting expert, that Walker was not telling the truth, Martin caused him to be discharged on the ground of "gross insubordination * * * lying." Upon the hearing before the trial examiner, Walker admitted that he had posted the notices, and thus proved the truth of Martin's contention that he had made a false statement respecting the matter. We conclude that in light of this situation, it would be stretching the Board's power of drawing inferences from the Company's other anti-union conduct pretty far to approve its determination that this employee's bad conduct was not the real ground for discharge, but that Walker was really fired for his union activities. Under the circumstances we can not affirm the part of the order requiring the rehiring of Walker.

■■ Finally, we come to the charge that the respondent illegally interrogated its employees concerning their "union membership, activities and desires." Of course, an employer may not, by interrogation coerce or interfere with the right of an employee to adhere to the union. The interrogation that is here criticized resulted from questions asked by Martin, the personnel director, of employees who had reported to him about the solicitation of the employees who were later discharged for violating the anti-solicitation rule. We can not find any substantial evidence on the record as a whole to warrant a determination by the Board that this interrogation was intended to or did in fact unlawfully interfere with the rights of the employees within the meaning of Section 8(a) (1) of the Act.

The respondent also complains that the Board's order goes beyond the acts specifically found by the Board to have constituted unfair labor practices. The order in this proceeding, as recommended by the Trial Examiner, directed that the respondent should cease and desist from: " ᕯ * * (c) in any like or related manner interfering with, restraining or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join or assist the above-named or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in any other concerted activity for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any and all of such activities."

In his discussion of the case, the Examiner stated that, "In view of the nature of the unfair labor practices committed, and in view of the finding of unfair labor practices committed in prior cases considered by the Board, the commission of similar and other unfair labor practices reasonably may be anticipated. I shall therefore recommend that the respondent be ordered to cease and desist from in any manner fringing upon the rights guaranteed its employees in § 7 of the Act." The Board, noting that the language in the actual order restricted the cease and desist order to respondent's prospective conduct "in any like or related manner" directed that the words "like or related" to be eliminated and that the word "other" be substituted therefor, so that the respondent would be ordered to cease and desist from violating Section 7 in any *other* manner.

■ While this Court has approved orders prohibiting conduct beyond the specific acts found by the Board to amount to unfair labor practices, when we found it appropriate to affirm the Board's finding that the respondent had "demonstrated a proclivity to violate the act," Truck Drivers & Helpers Local Union No. 728 v. N. L. R. B., 5 Cir., 332 F.2d 693, 697, our attention has not been called to any case in which we have approved an order as broad as that here urged upon us by the Board. This order

would amount to an injunction against any violation of Section 7. We think the record before the Trial Examiner does not warrant an order of such breadth. We conclude, therefore, that the order, as actually entered by the Trial Examiner which limited its effectiveness as against conduct of a "like or related manner" is the widest permissible order that may appropriately be approved. See May Dept. Stores v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145, and N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

In addition to eliminating the reinstatement order as to the employee John T. Walker, the Board's order must be amended in the following respect: The recommended order of the Examiner shall be the order of the Board except for the modification of Paragraph 1(b), as designated in the Board's order.

As modified, the Order will be enforced.