**REPUBLIC ALUMINUM COMPANY,**
formerly Bauer Aluminum Co.,
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 22716.**

United States Court of Appeals
Fifth Circuit.

April 25, 1968.

Allen P. Schoolfield, Jr., Hugh M. Smith, Dallas, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Elliott C. Lichtman, Atty., N.L.R.B., Washington, D. C., for respondent.

Michael H. Gottesman, Elliott Bredhoff, George H. Cohen, Washington, D. C., for intervenor.

Before BROWN, Chief Judge, TUTTLE, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLD-

BERG, AINSWORTH, GODBOLD and DYER, Circuit Judges.*

On Petition for Rehearing

TUTTLE, Circuit Judge:

The narrow question presented on this appeal may be stated as follows: In an unfair labor practice proceeding, brought by the union on the ground that the company enforced a rule prohibiting entry on plant property without permission to discipline off-duty employees distributing union literature in the company parking lot, does the general counsel have the burden of showing that there were insufficient alternative means of communication between the union and the employees.

In opinion and decision of a panel of this court dated March 1, 1967, Republic Aluminum Co. v. N.L.R.B., 5 Cir., 374 F.2d 183, the court answered this question in the affirmative. Motion for rehearing by the court en banc having been filed, and a majority of the members of the court in active service having voted in favor of reconsidering the case en banc, the matter was submitted to the court upon briefs without oral argument.

There is no dispute as to the facts which are briefly stated here precisely as stated by the court in its earlier opinion: In 1960 Republic Aluminum Company, a manufacturer of aluminum building materials at Richardson, Texas, (then Bauer Aluminum Company) adopted a number of rules which were placed in various places about its plant. There was not then any union activity at the plant. One of the rules prohibited "Entering plant property enclosed by a fence without permission and not having cleared through the main office." A fence around Republic's parking lot was taken down and the words, "enclosed by fence," were deleted from the rule. A statement of the penalty for violation followed each rule. The penalty for violation of the quoted rule was three days suspension for the first offense and discharge for the second offense.

Early in January of 1964 the United Steelworkers of America, AFL-CIO, hereinafter called the Union, began an organization campaign at Republic's plant. On February 6, 1964, the Union sent Republic employee Charles A. Johnson to the parking lot of Republic, located between its plant and a street, for the purpose of distributing organizational handbills to employees coming off shift at 11:00 P.M. and soliciting signatures of such employees on Union authorization cards. Johnson did not procure permission nor did he clear through the main office. Before Johnson had embarked upon his mission he was confronted by Patrick H. Flores, Republic's production supervisor, who directed Johnson to leave the premises. Johnson complied. The next day Johnson was suspended for three days for violation of the rule.

On the night of February 13, 1964, the Union sent Johnson back to the parking lot for the distribution of Union literature and the solicitation of signatures on Union authorization cards. With him were employees Glen Swaner and Mernon Dollar. Johnson and Swaner went on the parking lot and commenced the distribution of the Union literature. Dollar remained off company property. Some of the employees set fire to the Union papers given them, and others placed the literature on the fire. A Republic guard told Johnson and Swaner that they shouldn't be on the parking lot. They left, but not until police had been summoned and appeared. For his second offense Johnson was discharged. Swaner was given a three day suspension.

The Union brought an unfair labor practice charge before the National Labor Relations Board against Republic,

---

* Judge Jones, although a Senior Judge, was qualified to participate in this rehearing en banc. However, he neither participated in the rehearing or reconsideration of the case as a member of the Court. Judge Jones's statement concerning this matter follows the opinion of the Court.

asserting that the discharge of Johnson and the suspension of Swaner were in violation of Section 8(a) (1), (3), of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The trial examiner held that the Act had been violated. The Board, with one member dissenting, sustained the examiner, ordered that Johnson be reinstated with back pay, that Swaner be made whole for any loss resulting from his suspension, and that a notice be published. 152 N.L.R.B. 1360. Before the Court is Republic's petition to set aside the Board's order and the Board's cross-application for enforcement.

The issue before us is whether the company had the right to enforce, against Johnson and Swaner, the rule against coming on the property without permission [1] when their purpose was to distribute union literature and solicit union authorizations. The Board supported the conclusion of the examiner to the effect that the rule as applied was unlawful because it prevents off duty employees from engaging in union activities during non-work time and in non-work areas without first securing the employer's permission. The Board held that the discharge of Johnson and the suspension of Swaner were in violation of Section 8(a) (1), (3), since the employer had made no showing that the rule was necessary to maintain production and discipline.

■ This decision by the Board was based upon a rule originally established by it in the *Peyton Packing Company* case, In the Matter of Peyton Packing Company, Inc., 49 N.L.R.B. 843, Enforced N.L.R.B. v. Peyton Packing Company, Inc., 5 Cir., 1944, 142 F.2d 1009, cert. denied 322 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 585. This rule, later specifically approved by the United States Supreme Court in Republic Aviation Corporation v. N.L.R.B., 324 U.S. 793, 65 S.Ct. 982,

89 L.Ed. 1372, may be stated as follows: "A rule prohibiting union solicitation by an employee outside of working hours, although on company property * * * must be presumed to be an unreasonable impediment to self-organization and therefore discriminatory in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline." See Republic Aviation Corp. v. N.L.R.B., supra, footnote 10, 324 U.S. 793, 903, 65 S.Ct. 988.

In the earlier opinion in this case the Court considered that the case of N.L.R.B. v. United Steelworkers Union of America, CIO, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383, added a further requirement before there could be application of the *Peyton Packing Company* principle—That is, even though there was no showing that the no-solicitation rule was necessary to maintain production and discipline, as outlined in *Republic Aviation Corporation*, supra, there was a further burden on the general counsel of showing the absence of an alternative means whereby the union could communicate with its members.

■ We conclude that the facts in the *Steelworkers* case were so different as to make it inapplicable to a situation where the facts are identical with the earlier decided *Republic Aviation Corporation* case. In the *Steelworkers* case, the rule at issue was a rule prohibiting solicitation during *working* hours, a perfectly valid rule. In that case the company itself had violated its rule by anti-union activities and the union claimed that since the company broke its own rule by soliciting anti-union sentiment at work benches during work hours, unions should have the same privilege. In this context the Supreme Court ruled that there was no violation of the act to enforce it against the union so long as the union had not shown that it did not have other means

---

1. The Board found and the Court agrees that it is immaterial whether or not the company would have granted permission to Johnson and Swaner to enter its premises if such a request had been made.

of communications which would be just as effective.

Other panels of this court have repeatedly applied the original *Peyton Packing Company* rule. See N.L.R.B. v. Southwire Company, 5 Cir., 1965, 352 F.2d 346; N.L.R.B. v. Walton Manufacturing Company, 5 Cir., 1961, 289 F.2d 177; Brewton Fashions, Inc. v. N.L.R.B., 5 Cir., 1966, 361 F.2d 8, cert. denied 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75. These are several of many cases in which this Court has written, subsequent to the *Steelworkers* case, and in some of which the precise argument was made as is here contended for in which this court has adhered to its original *Peyton Packing Company* rule. Moreover, it is significant that in the case of *LeTourneau Company of Georgia,* which was decided with the *Republic Aviation Corporation* case, supra, the same point was urged upon the Court that is now put forward by the employer here. The Court said in *Republic Aviation,* page 798, 65 S.Ct. page 985:

"The contention is that there must be evidence before the Board to show that the rules and orders of the employers interfered with and discouraged union organization in the circumstances and situation of each company. Neither in the Republic nor the LeTourneau cases can it properly be said that there was evidence or a finding that the plant's physical location made solicitation away from company property ineffective to reach prospective union members."

Then, after stating that there was no proof of any special circumstances of the kind referred to, the Court adopted the Labor Board's presumption rule without modification. The Court said:

"Not only has the Board in these cases sufficiently expressed the theory upon which it concludes that rules against solicitation or prohibitions against the wearing of insignia must fall as interferences with union organization, but, in so far as rules against solicitation are concerned, it

had theretofore succinctly expressed the requirements of proof which it considered appropriate to outweigh or overcome the presumption as to rules against solicitation. In the Peyton Packing Company case, 49 N.L.R.B. 828, at 843, hereinbefore referred to, the presumption adopted by the Board is set forth."

Thus, the Court expressly adopted the *Peyton Packing Company* rule that says in effect that the presumption of illegality of the no-solicitation rule can be overcome only by a showing "that special circumstances make the rule necessary in order to maintain production or discipline." There is no requirement that in the absence of such proof the burden is then on the general counsel also to show that there was a lack of sufficient alternative means of solicitation.

While there are cases from other circuits that take a different view, e. g., N.L.R.B. v. Rockwell Manufacturing Company, 3 Cir., 1959, 271 F.2d 109, we conclude that the long line of cases decided by this Court correctly construes the present state of the law as announced in the *Republic Aviation Corporation* case. *Steelworkers* does not purport to overrule or modify *Republic Aviation.* We should not lightly read into it such a serious modification.

Our view of the law is concurred in also by the Court of Appeals for the Second Circuit in N.L.R.B. v. United Aircraft Corporation, 2 Cir., 1963, 324 F.2d 128.

■ The decision of the Board supporting the examiner's finding that there were no special circumstances present here to warrant a departure from the rule is supported by the evidence and is not clearly erroneous. Here, again, it is significant that in the *LeTourneau* case "the rule was adopted to control littering and petty pilfering from parked autos by distributors," substantially the same basis put forward for enforcing the rule here. See 324 U.S. 793, 797, 65 S.Ct. 982, 985.

The previous opinion and judgment of this Court is, therefore, vacated and it is ordered that enforcement will be granted.

JONES, Circuit Judge.

When a judge who is eligible to participate in a decision declines to do so, it would seem to be proper and perhaps desirable that he give his reasons for refraining.

The issues in this proceeding were submitted to, argued before and decided by a panel of this Court. A "rehearing" before the Court en banc was ordered by a majority of the judges of the Circuit who were then in active service. Those judges met and considered the cause and as appears from the opinion, have now vacated the opinion and judgment of the Court rendered by the panel of the Court. Argument of counsel was not heard or invited and since the record does not show any waiver by the parties or their counsel of oral argument, it is assumed that there was no such waiver.

The controlling statute provides:

"Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. A court in banc shall consist of all active judges of the circuit." 28 U.S.C.A. Sec. 46(c)

The provision of Rule 25(a) of the Rules of this Court that "an order for rehearing en banc may direct whether the case or any feature thereof is to be reargued orally" will not control if it is in conflict with the Act of Congress. The order of the Court granting re-hearing en banc provides that "the case will be considered on briefs" which presumably was intended to deny oral argument.

"Words in common use should be given their usual and ordinary mean-ing." Federal Land Bank v. Searcy, 5th Cir. 1940, 109 F.2d 418.

This Court has said:

"In the construction of a statute, language is to be given its common and ordinary meaning unless it appears from the context that a different meaning plainly was intended by the enacting body." Buttecali v. United States, 5th Cir. 1942, 130 F.2d 172.

The statute to which we must look provides:

"Cases and controversies shall be heard and determined by a court or division of not more than three judges unless a hearing or rehearing before the court en banc is ordered * * *." 28 U.S.C.A. Sec. 46(c)

If "heard," "hearing" and "rehearing" are to be given their usual and ordinary meaning, as I had supposed, then there must be something to be heard. "To hear" implies that someone is before the Court to speak. Hoffman v. Newell, 20 N.Y.S. 432. What is the Court to hear but argument? It may be stressed that the Court is to hear as well as determine. If it was the intention of Congress that the Court might refuse to permit argument to be heard, it could have expressed such an intention by omitting the requirement that the Court should "hear" and merely directed that the Court "determine" cases and controversies. "The one who decides must hear." Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 80 L.Ed. 1288. I do not think that the Court, in writing its rules or in determining whether or not it will "hear" parties or their counsel, should use words, as did Humpty-Dumpty, to mean what the judges "choose them to mean—neither more nor less." I do not believe that the Court should inferentially determine that no meaning is to be given to the word "hear" as used in 28 U.S.C.A. § 46(c).

Believing as I do that the statute requires that the Court hear as well as determine when it takes a case for rehearing en banc and that without a hearing of argument or giving an opportunity

for parties or their counsel to be heard, I conclude that the judges of the Court were without jurisdiction under Section 46(c). Being of this view, I felt that I should not participate.

The foregoing views are based upon the statute. I think it might be urged with much plausibility that the disposition of a cause by an en banc Court without affording an opportunity for argument is a violation of the due process requirement. The cause was argued by counsel before a panel of the Court. The parties to the proceeding were entitled as a matter of right to present their views to the Court orally and did so. The rule that a Court should hear before it decides should be applicable to a rehearing en banc as well as to an initial hearing before the panel. It may be that none of the judges who concluded that the panel's decision was wrong would have been persuaded by the argument of counsel had such argument been afforded. Nevertheless, it would seem that the opportunity should have been afforded to present argument as was done before the panel and the failure to permit such argument might well be regarded as a denial of that fundamental requirement of fairness which is the essence of due process. See Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129.

En banc Courts are convened only when extraordinary circumstances exist. United States v. American Foreign Steamship Corporation, 363 U.S. 685, 80 S.Ct. 1336, 4 L.Ed.2d 1491, reh. den. 364 U.S. 854, 81 S.Ct. 30, 5 L.Ed.2d 77. I have already suggested that perhaps none of the judges of the Court who participated in the decision vacating the decision and judgment of the panel required the benefit of argument of counsel or that any of them would have been persuaded to a different view had such argument been permitted. I only say that, in my opinion, counsel should have been given the opportunity to make an effort to convince the Court of the soundness of the positions which they took. I think that the denial of the right to be heard may well be a denial of due process.

The new Federal rules of appellate procedure which are not effective until July 1, 1968, can have no application to this proceeding and should not be taken as a guide either in the matter of statutory construction or the determination of the Constitutional question.

While it may have no bearing upon either a construction of the statute or the application of the Constitutional principle, I would comment that if a case is one where extraordinary circumstances exist, the Court ought not deprive itself of the right to hear any more than it should deny the parties or their counsel the right to be heard.