PATIO FOODS, a Division of R. J. Reynolds Foods, Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 25453.

United States Court of Appeals Fifth Circuit.

Aug. 27, 1969.

George W. Krog, San Antonio, Tex., Earle K. Shawe, Baltimore, Md., Shawe & Rosenthal, Baltimore, Md., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Jerome Weinstein, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, William Wachter, Atty., National Labor Relations Board, for respondent.

Before BELL and SIMPSON, Circuit Judges, and ROBERTS, District Judge.

SIMPSON, Circuit Judge:

The Board found that the Company violated Section 8(a) (1) and (3) of the Act, Title 29 U.S.C. Section 158(a) (1) and (3) by discharging employees Alice Jordan and Rachel Villarreal.[1] Reinstatement of the employees with back pay was ordered. The 8(a) (1) violations were based solely on these discharges. The petitioner, Patio Foods, seeks to set aside the order while the Board cross-petitions for enforcement.

The precise question upon which this proceeding turned was whether the truck loading and maneuvering facility at Company's plant was a work area. Petitioner contends that it was, and we agree. It follows from this that the Board's conclusion to the contrary, adopting the opinion of the trial examiner, cannot stand.

Alice Jordan and Rachel Villarreal were employed in the enchilada department of Patio until April 11, 1966. On

---

1. The Board's order is reported at 165 N.L.R.B. 63 (1967).

that day the department closed about 4:45 p. m., fifteen minutes before the regular closing time, because of a shortage of materials. Jordan and Villarreal left the plant building and walked through the Company truck loading and maneuvering area on a path used by Patio employees to reach the employee parking lot. The truck loading area was completely enclosed by a fence and was adjacent to the employee parking lot. The parking lot likewise was fenced. There was a gate between the two enclosed areas, and another gate provided access from the parking lot to the public street.

Jordan and Villarreal went to the street gate where two union organizers and another Patio employee had union literature. Jordan and Villarreal took a quantity of the literature and reentered the employee parking lot, passing out pamphlets as they walked to employees leaving work. The two women continued on the path through the truck loading and maneuvering area to a point near the exit from the plant building.

The receptionist at the gate connecting the truck loading area and the employee parking lot asked Jordan and Villarreal if they had permission from the plant general manager to distribute materials in that area. When they replied that they needed no permission, the receptionist warned them that the general manager would object. As the two women continued the distribution, the receptionist called the guard from the main gate. Upon arrival, the guard grabbed a pamphlet out of Jordan's hand and pulled her around by the arm. He told her that she was not supposed to be passing out pamphlets in that area.

At this time the general manager and the plant superintendent came from the building and approached the group. The manager ordered Jordan and Villarreal to stop distributing the pamphlets and to get off the plant property. When they refused he ordered them to come into his office. When they again refused, he threatened to call the police and told them not to report for work the next day.

The manager and superintendent then went back into the building. Shortly thereafter they returned and the manager told the women that they were breaking "a long-time set regulation" and that they were fired. Jordan and Villarreal continued to distribute the literature as they left the company property.

At the time of the distribution and subsequent argument, some of petitioner's employees were loading a truck at a loading dock adjacent to the path where Jordan and Villarreal were standing. These employees were to work until 7:00 p. m. The supervisor of the loading operation and one of the employees engaged in loading this truck testified that the employees stopped loading in order to watch the distribution and argument. Similar testimony was introduced with respect to twelve other employees in another nearby department.

From these facts the examiner concluded that the distribution did not occur within a working area since it was an "area used by employees going to or leaving from work." The trial examiner further concluded that the distribution was a protected activity because it was on nonwork time in a nonwork area and that petitioner violated Title 29 U.S.C. § 158(a) (1) and (3) in interfering with the activity and in discharging the two employees. We disagree.

■ To prohibit the distribution by employees of union literature in nonwork areas on nonwork time in the absence of special circumstances has long been recognized to be an unfair labor practice. Republic Aviation Corp. v. NLRB, 1945, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372; Republic Aluminum Co. v. NLRB, 5 Cir. 1968, 394 F.2d 405; Campbell Soup Co. v. NLRB, 5 Cir. 1967, 380 F.2d 372, 373; Brewton Fashions, Inc. v. NLRB, 5 Cir. 1966, 361 F.2d 8; NLRB v. Mira-Pak, Inc., 5 Cir. 1965, 354 F.2d 525; NLRB v. Southwire Company, 5 Cir. 1965, 352 F.2d 346; NLRB v. Plant City Steel Corp., 5 Cir.

1964, 331 F.2d 511; NLRB v. Linda Jo Shoe Company, 5 Cir. 1962, 307 F.2d 355.

█ Conversely, the implicit holding of these cases is that an employer's legitimate interest in keeping his employees' work stations free of the disruptive influence of handbilling justifies the prohibition of union literature distribution in work areas where employees are, in fact, working. This was the case here once the order to cease the distribution was given.

Jordan and Villarreal were handing out pamphlets in an area that petitioner had designated for truck loading and maneuvering. The trial examiner found that the women were standing next to a truck that was being loaded at the time of the distribution.

█ We cannot agree with the trial examiner and Board that the path used by employees going to and from work somehow converted the truck loading facility into a nonwork area. The logic which enabled the trial examiner to preclude this area from being a work area merely because it is used by employees as a path of ingress and egress does not survive critical appraisal. Such reasoning would render virtually all portions of a normal plant or factory into nonwork areas merely through the process of path to work stations.

The loading of trucks is no less a vital part of the production process because it is performed outside the plant building. The loading area was physically separated from the employee parking lot by a metal fence. With the exception of permitting a few cars to come just inside the gate connecting the loading area and the parking lot to pick up employees after work, petitioner restricted the area to truck loading and maneuvering operations. It was simply another department of the plant.

This nonwork area holding, however, was only one in a two-step method used in deciding against Patio. In addition the trial examiner found that the employees loading the truck were distracted by the argument between Jordan and the general manager, not the distribution of union literature. The trial examiner, therefore, placed the responsibility for the disturbance on the general manager and found as a matter of fact that the distribution of the pamphlets did not interfere with the work of the loaders. However, in considering whether the plant manager was entitled to order Jordan and Villarreal to cease distribution in the truck loading area in the first place, we are concerned with potential rather than actual distraction. We conclude that petitioner's interest in cleanliness, order, and discipline in a work area where employees are working justified the general manager's prohibition of handbilling in that area.

General Counsel contended at the hearing before the trial examiner that the general manager based his dismissal of Jordan and Villarreal on violation of an invalid company nonsolicitation rule. The Company rules stated as ground for immediate dismissal: "Solicitation on Company time for any cause or purpose not expressly approved by the management". Testimony was introduced at the hearing that the rule was enforced only in working areas during working hours. Campbell Soup Co. v. NLRB, supra. Jordan further testified that she had distributed union literature in the Company lunchroom and parking lot without interference. The record is devoid of any evidence of discriminatory enforcement. William L. Bonnell Co. v. NLRB, 5 Cir. 1969, 405 F.2d 593. The trial examiner went no further than to declare that the rule did not violate the Act. We pretermit decision on the question of validity of the rule, concluding only that the rule was inapplicable under the particular circumstances. Even absent a rule, Patio's general manager could lawfully order Jordan and Villarreal to cease distribution in a work area and this was done.

In sum, the finding that the distribution was in a nonwork area is unsupported by substantial evidence based on the record as a whole. Universal Camera Corp. v. NLRB, 1950, 340 U.S. 474, 71

S.Ct. 456, 95 L.Ed. 456. The employer could validly prohibit distribution in a work area. It was prohibited when the general manager ordered that the distribution cease. Jordan and Villarreal persisted and the general manager then discharged them for "breaking the rules."

The case is left in the posture of the Board's order, premised as it was on the finding that the distribution area was a nonwork area, having to be set aside. Patio's general manager having ordered that the distribution cease and his order having been disobeyed, Jordan and Villarreal were discharged. The Company had a rule against insubordination and the insubordination here was itself a valid ground for the discharges. On insubordination being a sufficient ground for discharge, see NLRB v. Soft Water Laundry, Inc., 5 Cir. 1965, 346 F.2d 930, 934–935. We find no substantial evidence to support the Board's finding of 8(a) (1) and (3) violations, and refuse enforcement.

The petition to set aside is granted; the cross-petition to enforce is denied.