**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**MANGURIAN'S, INC., Respondent.**

No. 77–1487
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1978.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Associate, Gen. Counsel, N.L.R.B., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, John D. Burgoyne, Supervisor, Howard E. Perlstein, Atty., Washington, D. C., for petitioner.

James M. Blue, Jr., Shenandoah Station, Miami, Fla., John-Edward Alley, Michael R. Miller, Tampa, Fla., for respondent.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

RONEY, Circuit Judge:

The National Labor Relations Board found Mangurian's, Inc. violated § 8(a)(1) of the Act, 29 U.S.C.A. § 158(a)(1) (1973), while opposing an organizational campaign mounted by the Retail, Wholesale and Department Store Union, AFL–CIO, 227 N.L. R.B. No. 28 (Dec. 7, 1976). The Board seeks enforcement of its cease and desist order. We grant enforcement for three reasons: (1) substantial evidence supports the Board's determination that Mangurian's discriminated against union solicitation, reprimanded an employee who passed out organizational literature, and threatened to close stores if the union prevailed, (2) the Board properly concluded that an allegation of union racial and other invidious discrimination need not be considered as an affirmative defense, and (3) the election result locked inside a ballot box impounded by the NLRB is irrelevant to this enforcement petition.

Mangurian's, Inc. operates a chain of retail furniture stores and supporting warehouses. In late February 1975 the union began a concerted effort to organize the sales and nonsales employees in southeastern Florida. The union filed election petitions on various dates between March 10 and 13. On May 21 the Board's Regional Director directed that an election be held. On June 9, however, the union filed the unfair labor practice charges which are the subject of this review proceeding. The Board held the election on June 20, but impounded the ballots pending disposition of the unfair labor practice charges.

### Discriminatory "No-Solicitation" Rule

Prior to the union campaign, the company had no rule prohibiting solicitation by employees at its West Palm Beach store, and collections for various charities regularly occurred. About March 1 the company posted a notice in the store which said that because of the union's "campaign to get in here . . . as in all matters which are unrelated to work, no person will be allowed to carry on Union organizing activities on the job" and violations will result in "serious disciplinary action."

■ The timing of the rule provides a sufficient basis for a Board finding that "the Company had motives other than maintenance of production or discipline." *Brewton Fashions, Inc. v. NLRB*, 361 F.2d 8, 17 (5th Cir.), *cert. denied*, 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966); *see Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 803 & n. 10, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). As such the rule presents a violation of § 8(a)(1), which makes it unlawful for an employer "to interfere with, restrain, or coerce employees" in the exercise of their rights to organize. The company removed the notice on March 9, and never enforced it, but those facts only mitigate the degree of coercion. This is not a case where the Board's only objection to a rule was the company's discriminatory enforcement. *See Amalgamated Clothing Workers v. NLRB*, 124 U.S.App.D.C. 365, 377–378, 365 F.2d 898, 910–911 (1966). Furthermore, the Board's misstatement in its complaint which indicated the rule was not posted until after election petitions were filed on March 10 was not a material error and did not deprive the company of adequate notice of the charges against it. *See NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157 (5th Cir. 1977). Finally, the approval of a notice containing similar language in *Surprenant Manufacturing Co. v. NLRB*, 341 F.2d 756, 758 (6th Cir. 1965), is not persuasive. There no claim of discriminatory timing was made, and the decision focused on sections of the notice for which this case provides no parallel.

### Reprimand of Employee for Leafleting

A few days before a union meeting on March 16, employee Rene Proulx passed out leaflets near the exit of a Fort Lauderdale complex containing a company distribution center and a "Big M" store. Proulx was off from work that day. The leaflet invited recipients to "hear the real truth" at a given time and place. Above that message was a caricature of a business executive shouting into his intercom "Send me in someone to fire" and printed near his head were the words "Wilson, Inc." Ray Wilson was the company's president. About two months after the leafleting, Wilson sent Proulx a written warning and reprimand which implied the leaflet demeaned the company and its management in the eyes of its customers and if repeated "more serious action than this reprimand will be taken."

■ An employee has a right to distribute union literature on nonworking time in nonworking areas, absent an affirmative showing of special circumstances—such as the maintenance of production or discipline—justifying curtailment of that right. *Republic Aviation Corp. v. NLRB, supra; Republic Aluminum Co. v. NLRB*, 394 F.2d 405 (5th Cir. 1968) (en banc).

■ The company claims that its precarious financial position, coupled with the tendency of the leaflet to demean the company in the eyes of its customers, present such a special circumstance. The administrative law judge found, however, on Proulx' testimony, that only warehouse employees received the meeting announcements. While the language of the leaflet— "Join Mangurian's Employees"—could support an inference that it was intended for customers, and the company's operations manager testified Proulx gave the leaflet to customers, the administrative law judge did not credit his testimony. The company received no complaints from customers. In resolving factual disputes, credibility resolutions by the Board are entitled to affirmance on review unless the credited testimony is inherently unreasonable or defective. *See NLRB v. American Art Industries, Inc.*,

415 F.2d 1223, 1227 (5th Cir. 1969), *cert. denied,* 397 U.S. 990, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970).

■ Alternatively, the company argues the leaflet was a "wanton attempt to lampoon President Wilson" which was

> so disrespectful of the employer as seriously to impair the maintenance of discipline and thus render the employee unfit for further service.

*NLRB v. Blue Bell, Inc.,* 219 F.2d 796, 798 (5th Cir. 1955) (employer called "a liar"). That conclusion, however, is out of place here. In the context of an organizational campaign hotly contested by both sides, some leeway must be tolerated. *See Linn v. Plant Guard Workers,* 383 U.S. 53, 61, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). The caricature did no more than express in a humorous fashion the acknowledged power of the president of an unorganized company to hire and fire. The Board's conclusion is in accord with the facts: "the literature was not defamatory and did not exceed the limits of appropriate campaign literature."

### Threats to Close Stores

■ At the time of the campaign, the company had a reputation for unprofitability. It had sustained operating losses for five years, and the company had closed or sold stores in New York, Texas and Colorado, retaining only those in Georgia and Florida. Employees frequently questioned company officials about potential closings. President Wilson, who was hired to reverse the company's ill fortune, had adopted a policy of optimism. The Board found that during the campaign, however, management officials on three separate occasions unlawfully threatened that a union victory would by itself cause the company to go out of business. Such a statement, unaccompanied by a proven causal link to specific union economic demands, is a coercive threat rather than an honest forecast. *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 619–620, 89 S.Ct. 1818, 23 L.Ed.2d 547 (1969).

The company attacks the sufficiency of the evidence supporting all three findings.

Taking the threats in chronological order, the first came on April 28 when company Personnel Director Steven Waldschmidt departed from a prepared speech to eight assembled West Palm Beach store employees and stated that if the union got in, the union could possibly cause the company to go out of business. The company presented witnesses who denied the statement was made, but the administrative law judge found one's memory imperfect, another's statement uncertain, and the third's testimony in part contradicted by facts not in dispute. In contrast, the administrative law judge determined that the testimony of two pro-union employees which established that the statement was made had the "ring of truth and certainty." Even though the judge apparently erred when he also placed reliance on the company's failure to call witnesses equally available to both sides, his finding that the threat was made is supported by a reasonable credibility choice.

The company also argues that the threat, even if made, was not a dire prediction amounting to a threat of reprisal or force or promise of benefit, but was instead a mere opinion protected by § 8(c), 29 U.S.C.A. § 158(c), and the First Amendment. *See Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 778–779, 96 S.Ct. 1817, 48 L.Ed.2d 346, (Stewart, J., concurring). The case on which the company relies, *NLRB v. Southwire Co.,* 429 F.2d 1050 (5th Cir. 1970), *cert. denied,* 401 U.S. 939, 91 S.Ct. 932, 28 L.Ed.2d 218 (1971), upheld a special master's determination that a company president's speech was protected even though it contained the opinion that he was, in the words of the Court, "unsure of the status of the Company, future raises, or of a profit sharing plan" if the union came in. *Id.* at 1057. While taken in isolation, that language bears some similarity to the statement made here, the holding of the *Southwire Co.* case emphasizes that protection under the Act depends on whether the statements are based on fact and whether they tend to coerce in the context in which they are made. The Court said:

The relationship between predictions and fact and their possible impact upon employees is a question of fact and factual findings should not be overturned unless . . . unsupported by substantial evidence . . . .

*Id.* at 1058. Just as the Court in that case deferred to the special master, it is appropriate here to defer to the findings of the administrative law judge. Throughout these proceedings, the company has failed to produce evidence to show how the union, which had not yet even presented its demands, would have caused the company to go out of business. The company bore the burden to produce such evidence. *Zim's Foodliner, Inc. v. NLRB*, 495 F.2d 1131, 1137 (7th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974).

The second threat occurred in early May, when company controller Jerome Burd visited the North Miami store and engaged salesmen Martin Gorin and Nat Donay in conversation concerning the company's poor financial condition. Burd noted that L. James Wade, Jr., the chief executive of General Portland, Inc., Mangurian's parent company, had the power to close stores, and had threatened to close Mangurian's if the union got in.

The administrative law judge's decision on this point rested entirely on a resolution of conflicting testimony by Gorin and Burd. In a June affidavit, Gorin detailed the threat as well as his response to it. The company says the judge could not properly rely on that affidavit because it was contradicted by his testimony at the administrative hearing. *See NLRB v. Quest-Shon Mark Brassiere Co.*, 185 F.2d 285, 289 (2d Cir. 1950) (dictum). The only contradiction, however, was at trial when Gorin said the threat came from Burd himself rather than Wade. Questioned about the ambiguity, he said his affidavit was correct. The trial judge credited that statement on the ground the affidavit was taken five months before, at a time closer to the incident. At the same time, the administrative law judge found that Burd's rebuttal testimony only indirectly denied making the threats. Burd said he did not make the statement at the time Gorin said he made it, but he admitted at a later time discussing with Gorin the options Wade would face "about any adverse situation that might arise" within the company. The Board was entitled to rely on the administrative law judge's judgment concerning this testimony even though it simultaneously noted the administrative law judge was wrong in giving weight to the company's failure to call Donay, a witness available to either party.

The third threat was made in early June. Robert Poutre, the company's labor relations representative, visited the North Miami store and introduced himself to Gorin. During a discussion of the election issues, Gorin asked Poutre if Wade would close the store if the union came in. Poutre responded that Wade "was crazy enough to close down Mangurian's, if the union got in."

Gorin presented the only evidence that this threat was made. The Board upheld the administrative law judge's crediting of his version, even though six others present at the Miami store that day offered rebuttal testimony. The judge found Poutre's denial unreliable, because he described himself at trial as a "management consultant" when in fact he was the company's labor relations representative. Five salesmen said they did not hear the statement, but the administrative law judge noted that they frequently absented themselves from the conversation to wait on customers. The judge characterized their testimony as "blanket denials devoid of any convincing details to lend credibility." He further noted that one salesman had denied Poutre had even mentioned unions, which was contrary to Poutre's stated purpose in visiting the store. The company argues it was an error to give such heavy weight to Gorin's testimony when, in his June affidavit, Gorin described Poutre's visit to the store without mentioning the threat. Again, however, the company has failed to make the showing necessary to set aside a credibility choice resolved by the Board. The company has not attempted to rebut any of the factors the administrative law judge found to

discredit the testimony of the six men. Nor has it convincingly impeached Gorin. This Court "[is] not at liberty to displace the Board's choice if it is between two fairly conflicting views, even though we would justifiably have made a different choice had the matter been before us de novo." *NLRB v. Monroe Auto Equipment Co.*, 392 F.2d 559, 561 (5th Cir.), *cert. denied*, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968). The administrative law judge "wrote a full memorandum of decision in which he explained the reasons for his credibility determinations painstakingly and in detail." *NLRB v. Southern Cement Co.*, 417 F.2d 198, 199 (1969). Absent a more pressing showing of bias or error, his affirmation of Gorin's testimony must stand, and Gorin's statement provides sufficient evidence to support the Board's order in this case.

### Striking the Second Affirmative Defense

In its answer, the company alleged in its second affirmative defense that the union was disqualified from obtaining the Act's protection because it discriminates on the basis of sex, race, alienage and national origin. Upon the General Counsel's motion, the administrative law judge struck that defense and the Board approved his ruling.

■ At the time the judge ruled, the Board was declining to certify as bargaining agent any union shown to be engaging in a pattern and practice of discrimination. *Bekins Moving & Storage Co.*, 211 N.L.R.B. 138 (1974). A bargaining order, however, was not part of the remedy sought in this case, and so the allegations of the second affirmative defense were inapposite to the charged company violations of § 8(a)(1). The Board acted within its authority in rejecting the defense.

On appeal, the company seeks retroactive application of *Handy Andy, Inc.*, 228 N.L.R.B. No. 59, 94 L.R.R.M. 1354 (Feb. 25, 1977), in which the Board reversed the *Bekins* decision and held it would consider union discrimination in an appropriate unfair labor practice context. The company, however, does not argue that the Board's choice of *Handy Andy* remedy rather than

that of *Bekins* is compelled by statute. The company does argue that the Constitution forbids any Board action which furthers private racial discrimination. *See Shelly v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The unfair labor practice order in this case, however, is not drawn along racial lines and arguably does not favor the allegedly offending union over unions generally in their protection from the employer's unfair labor practices. Furthermore, the Board at any given time is entitled to assume that its other remedies for discrimination are available and will be used. *See NAACP v. FPC*, 425 U.S. 662, 665 n. 2, 96 S.Ct. 1806, 48 L.Ed.2d 284 (1976).

### Remand to Count Ballots

■ In some cases, an unfair labor practice charge, filed before the Board directs an election, will "block" the election until the charge is resolved. In this instance, the Board had already directed the election when the union filed the unfair labor practice charges. Apparently acting pursuant to NLRB Field Manual § 11730.9b, the Regional Director exercised his discretion to complete the election and impound the ballots pending the outcome of the proceeding. *See generally* Annot., 18 A.L.R.F. 420, 424 (1974). The company argues that the Court should remand this case to the Board to count the ballots, which it says could make this proceeding moot, presumably because the union may have won.

The election result, however, could not moot this case. In *NLRB v. Raytheon Co.*, 398 U.S. 25, 28, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970), the Supreme Court held a subsequent election certified by the Board to be valid did not moot enforcement of prior unfair labor practice charges arising out of an election campaign. Despite intervening compliance, or in this case, union victory, future misconduct may occur, and enforcement is an essential predicate for a future contempt order. *See In re Labor Board*, 304 U.S. 486, 495, 58 S.Ct. 1001, 82 L.Ed. 1482 (1938).

ENFORCED.