The TIMES PUBLISHING COMPANY,
Petitioner, Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross-Petitioner.

No. 77–2888.

United States Court of Appeals,
Fifth Circuit.

July 20, 1978.

**2. Labor Relations** ⬬386

Benjamin E. Goldman, Ronald I. Tish, Washington, D. C., for petitioner, cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, John S. Erving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Marjorie S. Gofreed, Corinna L. Metcalf, Attys., N. L. R. B., Washington, D. C., for respondent, cross-petitioner.

Before COLEMAN, AINSWORTH, and VANCE, Circuit Judges.

COLEMAN, Circuit Judge.

Times Publishing Company (Company) seeks review of an order of the National Labor Relations Board (NLRB) which found that the Company had promulgated, maintained and given effect to overly broad rules against employee distribution and solicitation in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C., § 158(a)(1). The Board decision is reported, 231 N.L.R.B. No. 44, and the Board cross petitions for enforcement of its order. Except as to one facet of the case we enforce the Board order.

In its application for review, the Company raises several issues but only one merits discussion,[1] which may be stated as follows:

Was the main lobby in the Company's downtown location (1) a public place in which employee distribution of materials and solicitation may be pursued; or was it (2) a work area in which the Company might limit distribution; or was it (3) a place so nearly like a retail establishment that both distribution and solicitation may be proscribed?

The Administrative Law Judge found that the lobby was a work area, a finding which the Board reversed.

The Company argues that the location should be characterized as a retail establishment.

The Rule posted at the downtown location read as follows:

"The conducting of non-company business, such as canvassing, collection of funds, pledges, circulation of petitions, solicitation of memberships or any other similar types of activity are not permitted during the working time of any staffer, or at any time in public areas of the building, such as lobbies and elevators.

"The distribution of non-Times Publishing Company literature such as leaflets, letters or other written material by any staffer is not permitted during working time, in working areas or in public areas within the building."

*The Company's Operations*

The Company is engaged in the publication of newspapers in St. Petersburg, Florida, and maintains two locations, a printing plant on 34th Street and a downtown location housing its business offices.

The downtown location consists of an older six-story building with its own lobby and elevators and a more recent five-story addition which houses the main lobby. The main lobby is about seventy feet long and twenty feet wide and extends across the front of the building with an entrance to the side. At the right, upon entering, is a large linotype display and on the left is a bank of chairs. Running the length of the right inside wall, beyond the linotype display, are hallways leading to the retail advertising office, the classified ad center, the cashier's office, two elevators, and a twenty-five to thirty foot counter raised about four feet from the floor with a five to six foot opening above. The counter fronts both the cashier's office and the classified ad center and is divided into two sections, one being a cashier's cage and the other a classified ad window. On the opposite wall, across from the elevators, are a receptionist's desk and a table at which customers may fill out forms for placing classified ads. Further along the wall are more chairs and a table where back issues of the newspaper may be read by the public. On the far wall is the entrance to the personnel office.

The lobby is open to the public and is frequented by approximately 250 to 300 people a day. About 400 classified advertisements a week are placed in person at the classified ad window and paid for at the cashier's window. Also sold at the cashier's window are such items as back and current

---

1. The contentions of the company, attempting to support the rules promulgated at its printing plant on 34th Street, St. Petersburg, are altogether untenable and the board order insofar as it applies to the printing plant will be enforced without further discussion.

issues of the newspaper, photographs, reams of newsprint, flags, almanacs and reprints of books and magazines published by the Company. In addition, members of the public come into the lobby to bring news items such as wedding announcements, to tour the building and to receive various publications distributed by the Company as a public service. The receptionist directs these individuals to their destinations and makes available various forms they may wish to fill out. Employees frequently use the lobby and front elevators, but *more often* they use an entry at the back of the building. Visitors with business in other parts of the building also use the lobby and front elevators, and, in 1976, more than 4,000 people came into the lobby to apply for work.

### The Status of the Case

■ The Board stated that the Company exception to the Administrative Law Judge's failure to treat the lobby as a retail store put the status of the downtown lobby before the Board. This necessarily included the proper scope of organizational activity in the area. The Board then proceeded to hold that the facts did not support the conclusion of the Administrative Law Judge that the lobby is a Company working area where all union distribution may be prohibited. We have already described the Company activities carried on in the lobby. In light of the undisputed facts there set forth, we are compelled to hold that a reversal of the findings of the Administrative Law Judge on this point is without substantial support in the record; that, indeed, the evidence clearly demonstrated that the lobby was a Company work area.[2]

That, however, does not dispose of the case.

■ The Company insists as a matter of law, in the proper application of the Act, that organizational solicitation in the area would so seriously disrupt customer contact that the Act would permit the prohibition of such activity.[3] In other words, it is argued that in view of the activities customarily taking place in the lobby, it was entitled to be treated the same as a retail establishment or a restaurant, *Goldblatt Bros., Inc.,* 77 N.L.R.B. 1262, 1264 (1948); *McDonald's Corp.,* 205 N.L.R.B. 404, 408 (1973).

The Company says that the main lobby is a customer selling area, analogous to a retail store, and that a blanket ban on solicitation in the lobby was necessary to avoid disruption of its selling function.

The Board contends that the Company's basic function is the publication of news, not selling, and that employee organizational activities will not disrupt the publication of newspapers nor any selling which occurs in the lobby nor the normal function of the lobby as a passageway to other parts of the office complex. The Board submits that the decision as to the proper balance between the conflicting interests of management and labor is within the NLRB's area of expertise and for that reason this Court should give deference to the balance struck by the Board.

■ Because it held that the lobby was not a work area, the Board did not reach or decide whether the lobby should be characterized the same as a retail establishment.

2. No curtailment of an employee's right to distribute union literature on nonworking time in nonworking areas is justifiable absent an affirmative showing of special circumstances, such as the maintenance of production or discipline, *N.L.R.B. v. Mangurian's Inc.,* 5 Cir., 1978, 566 F.2d 463; *Patio Foods v. N.L.R.B.,* 5 Cir., 1969, 415 F.2d 1001; *Campbell Soup Company v. N.L.R.B.,* 5 Cir., 1967, 380 F.2d 372; *N.L.R.B. v. Linda Jo Shoe Company,* 5 Cir., 1962, 307 F.2d 355; *Republic Aviation Corporation v. N.L.R.B.,* 324 U.S. 793, 803, 804, 65 S.Ct. 982, 89 L.Ed. 1372 (1945).

3. A company rule prohibiting union solicitation on company property during nonwork time is presumed to be an interference with employee organizational rights and it will be held unlawful unless the employer proves special circumstances making the restriction necessary for the maintenance of production or discipline. *Republic Aviation Corporation v. N.L.R.B.,* 324 U.S. 793, 803, 804, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *Florida Steel Corporation v. N.L.R.B.,* 5 Cir., 1976, 529 F.2d 1225; *N.L.R.B. v. Varo, Inc.,* 5 Cir., 1970, 425 F.2d 293; *N.L.R.B. v. Walton Manufacturing Company,* 5 Cir., 1961, 289 F.2d 177.

It might be said that inferentially the Board decided this issue adversely to the Company when it declined to hold that the lobby was so much as a work area. On the other hand, we do not know what the Board might have held on this point had it been of the opinion that the lobby was a work area, primarily used for the sale of classified ads and other items.

In the meantime, the Supreme Court has decided *Beth Israel Hospital, Petitioner v. National Labor Relations Board,* —— U.S. ——, 98 S.Ct. 2463, 57 L.Ed.2d 370 [No. 77–152, June 22, 1978, 46 U.S.L.W. 4764]. Although this decision was in the context of a hospital cafeteria, the views there expressed may be of assistance to the Board in determining whether the lobby was entitled to the same treatment as a retail store or a hamburger outlet.

Accordingly, the Board Order here in issue will be enforced in all respects except as to the lobby. As to the lobby, the case will be remanded to the Board for further proceedings not inconsistent herewith.

ENFORCED in part

REMANDED in part.