UNITED STATES *v.* AMERICAN-FOREIGN
STEAMSHIP CORP. ET AL.

No. 138.   Argued April 25, 1960.—Decided June 20, 1960.

*Philip Elman* argued the cause for the United States.
With him on the briefs were *Solicitor General Rankin,
Assistant Attorney General Doub, Alan S. Rosenthal* and
*Herbert E. Morris.*

*Arthur M. Becker* and *J. Franklin Fort* argued the cause
for respondents.   With them on the briefs were *Gerald B.
Greenwald, William S. Stern, John Cunningham* and
*Israel Convisser.*

MR. JUSTICE STEWART delivered the opinion of the
Court.

The question to be decided here is a narrow one.   The
Judicial Code provides that in the United States Courts
of Appeals "[c]ases and controversies shall be heard and
determined by a court or division of not more than three
judges, unless a hearing or rehearing before the court in
banc is ordered by a majority of the circuit judges of the
circuit who are in active service."   It further provides
that "[a] court in banc shall consist of all active circuit
judges of the circuit."   28 U. S. C. § 46 (c).   The sole
issue presented is whether a circuit judge who has retired
is eligible under this statute to participate in the decision

of a case on rehearing *en banc.* We have concluded that he is not.

This litigation arose when the respondents, who had chartered ships from the Government under the Merchant Ship Sales Act, 50 U. S. C. App. §§ 1735 *et seq.,* sued the Government in the District Court for the Southern District of New York to recover amounts of allegedly excessive charter hire which had been assessed by the Maritime Commission. The Government moved to dismiss the libels on the ground that the claims were barred by the two-year limitation period prescribed by the Suits in Admiralty Act, 46 U. S. C. § 745. The libels were dismissed in the District Court on the authority of the Second Circuit decisions in *Sword Line, Inc.,* v. *United States,* 228 F. 2d 344, 230 F. 2d 75, aff'd as to admiralty jurisdiction, 351 U. S. 976, and *American Eastern Corp.* v. *United States,* 231 F. 2d 664.[1]

The District Court's decisions were thereafter affirmed by the United States Court of Appeals for the Second Circuit. That court, consisting of Circuit Judges Medina and Hincks and retired District Judge Leibell, held that the issues were controlled by the earlier *Sword Line* and *American Eastern* decisions. The court's opinion stated, however, that "[i]f the subject-matter of these appeals were *res nova,* we are by no means sure that our dispositions would coincide with those made by the majority opinion in Sword Line and by American Eastern. However, we will not overrule these recent decisions of other panels of the court." 265 F. 2d 136, 142.

Thereafter, on December 19, 1957, the Court of Appeals granted the libellants' petition for rehearing *en banc* and ordered that argument thereon be confined to written briefs to be submitted within twenty days. On March 1, 1958, Judge Medina retired pursuant to the provisions of

---

[1] 141 F. Supp. 58. Two of the libels were dismissed upon the same ground by another district judge in an opinion which is unreported.

28 U. S. C. § 371 (b).[2]    Almost five months later, on July 28, 1958, the court issued its *en banc* decision.    Circuit Judges Hincks and Moore and retired Circuit Judge Medina joined an opinion ordering the earlier three-judge decision withdrawn and remanding the causes to the District Court, 265 F. 2d 136, 144.    Judges Clark and Waterman dissented.[3]    In his dissenting opinion Judge Clark expressed doubt as to a retired judge's eligibility to participate in an *en banc* decision.    265 F. 2d 136, 153.

The Government then filed a petition for further rehearing *en banc,* directed primarily to the question which had been raised by Judge Clark.    The petition was denied in an opinion by Judge Hincks joined by Judges Moore and Medina, stating the view that "[s]ince Judge Medina was a member of the court *in banc* which was duly constituted to hear and determine the issues raised by the petition for rehearing, we think his subsequent retirement did not affect his competence to participate in the decision thereafter reached."    265 F. 2d 136, 154.    Judges Clark and Waterman filed a separate statement in which they expressed the opinion that Judge Medina's participation in the *en banc* determination was precluded by the plain language of the controlling statute.    265 F. 2d 136, 155.    Certiorari was granted to consider a question of importance to the Courts of Appeals in the administration of their judicial business.    361 U. S. 861.

As a preliminary to decision of the precise question before us it is important to make clear that this case in no way involves the eligibility of a retired judge to par-

---

[2] "Any justice or judge of the United States appointed to hold office during good behavior may retain his office but retire from regular active service after attaining the age of seventy years and after serving at least ten years continuously or otherwise, or after attaining the age of sixty-five years and after serving at least fifteen years continuously or otherwise."

[3] Judge Lumbard did not participate because of a prior connection with the litigation as United States Attorney.

ticipate in the hearing, rehearing or determination of a case as a member of a conventional three-judge Court of Appeals. Such participation is governed by different statutory provisions. The Judicial Code explicitly provides that "judges designated or assigned" shall be "competent to sit as judges" of such a court. 28 U. S. C. § 43 (b). Other provisions of the Code spell out in detail the system under which designations and assignments of retired judges are to be made. 28 U. S. C. §§ 294, 295, 296.[4]

Moreover, there is not involved here any issue as to the procedure to be followed by a Court of Appeals in determining whether a hearing or rehearing *en banc* is to be ordered. In the *Western Pacific Railroad Case*, 345 U. S. 247, it was held that this question is largely to be left to intramural determination by each of the Courts of Appeals. "The court is left free to devise its own administrative machinery to provide the means whereby a majority may order such a hearing." 345 U. S., at 250.[5]

Here we are concerned only with the specific provision of the Judicial Code which ordains that *en banc* proceedings shall be "heard and *determined*" by a court consisting of all the *"active* circuit judges" of the circuit involved. The literal meaning of the words seems plain enough. An "active" judge is a judge who has not retired "from regular active service." 28 U. S. C. § 371 (b). A case or controversy is "determined" when it is decided.

There is nothing in the history of the legislation to indicate that these words should be understood to mean

---

[4] In accord with this flexible statutory scheme, retired federal judges the country over have rendered devoted service in the trial and appellate courts of the United States, voluntarily and without economic incentive of any kind.

[5] An enlightening discussion by Judge Maris of the thorough administrative machinery worked out by the Court of Appeals for the Third Circuit appears in 14 F. R. D. 91.

anything else than what they say. As the Reviser's Note indicates, and as this Court pointed out in the *Western Pacific Railroad Case,* 345 U. S., at 250, 251, where the legislative history was fully reviewed, the statutory provision was added to the Judicial Code in 1948 simply as a "legislative ratification of *Textile Mills Securities Corp.* v. *Commissioner,* 314 U. S. 326 (1941)—a decision which went no further than to sustain the power of a Court of Appeals to order a hearing *en banc.*" [6]

The view that a retired circuit judge is eligible to participate in an *en banc* decision thus finds support neither in the language of the controlling statute nor in the circumstances of its enactment. Indeed, Congress may well have thought that it would frustrate a basic purpose of the legislation not to confine the power of *en banc* decision to the permanent active membership of a Court of Appeals. *En banc* courts are the exception, not the rule. They are convened only when extraordinary circumstances exist that call for authoritative consideration and decision by those charged with the administration and development of the law of the circuit.

When such circumstances appear, *en banc* determinations make "for more effective judicial administration. Conflicts within a circuit will be avoided. Finality of decision in the circuit courts of appeal will be promoted. Those considerations are especially important in view of the fact that in our federal judicial system these courts are the courts of last resort in the run of ordinary cases." *Textile Mills Corp.* v. *Commissioner,* 314 U. S., at 334–335. "The principal utility of determinations by the courts of appeals in banc is to enable the court to maintain its integrity as an institution by making it possible for a

---

[6] It is worth noting that the *Textile Mills* opinion itself carefully distinguished between circuit judges in active service and those who have retired. 314 U. S., at 327.

majority of its judges always to control and thereby to secure uniformity and continuity in its decisions, while enabling the court at the same time to follow the efficient and time-saving procedure of having panels of three judges hear and decide the vast majority of cases as to which no division exists within the court." Maris, Hearing and Rehearing Cases in Banc, 14 F. R. D. 91, at 96 (1954). As Judge Clark put it in the present case, the evident policy of the statute was to provide "that the active circuit judges shall determine the major doctrinal trends of the future for their court . . . ." 265 F. 2d, at 155.

Persuasive arguments could be advanced that an exception should be made to permit a retired circuit judge to participate in *en banc* determination of cases where, as here, he took part in the original three-judge hearing, or where, as here, he had not yet retired when the *en banc* hearing was originally ordered. Indeed, the Judicial Conference of the United States has approved suggested legislative changes that would provide such an exception, and a bill to amend the statute has been introduced in the Congress.[7] But this only serves to emphasize that if the

---

[7] At its Annual Meeting in September, 1959, the Judicial Conference of the United States received a joint report of its Committees on Court Administration and Revision of the Laws, stating their view that under the present law retired judges are not eligible to participate in *en banc* proceedings. "However, the Committees thought it proper to permit a retired circuit judge to be a member of the court of appeals sitting in banc in the rehearing of a case in which he has sat, by assignment, in the panel of the court which heard the case originally." The Conference agreed and approved a draft of a bill, presented by the Committees, which would add the following sentence to 28 U. S. C. § 46 (c): "A circuit judge of the circuit who has retired from regular active service shall also be competent to sit as a judge of the court in banc in the rehearing of a case or controversy if he sat in the court or division at the original hearing thereof." Annual Report of the Proceedings of the Judicial Conference of the United States (1959), pp. 9–10. A bill to effect this

statute is to be changed, it is for Congress, not for us, to change it.

We conclude for these reasons that under existing legislation a retired circuit judge is without power to participate in an *en banc* Court of Appeals determination, and accordingly that the judgment must be set aside. *American Construction Co.* v. *Jacksonville, T. & K. W. R. Co.*, 148 U. S. 372, 387; *Frad* v. *Kelly*, 302 U. S. 312, 316–319. In reaching this conclusion we intimate no view as to the merits of the underlying litigation. The judgment is vacated, and the case remanded for further proceedings consistent with this opinion.

*Vacated and remanded.*

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANKFURTER and MR. JUSTICE BRENNAN join, dissenting.

I can find nothing in 28 U. S. C. § 46 (c) which requires the decision the Court has made, and nothing in the decision which commends itself to considerations of sound judicial administration. For convenience I again quote § 46 (c):

> "Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. A court in banc shall consist of all active circuit judges of the circuit."

The statute need hardly be read, as the Court now holds it should be, as saying that a case in an *en banc* court shall be "heard and determined" by the active circuit judges; still less does it say that a case is not "determined"

---

change was introduced in the House of Representatives by Representative Celler on April 5, 1960, as H. R. 11567, 86th Cong., 2d Sess. 106 Cong. Rec. 6865.

until the decision of it is announced. The statute says no more than that ordinarily lawsuits before the Courts of Appeals are to be "heard and determined" before a panel of not more than three judges, but that a majority of the judges in active service may order that a case be set for "hearing or rehearing" before a court consisting of all the active circuit judges of the circuit sitting *en banc.*

The "heard and determined" clause on which the Court relies appears in a sentence whose purposes were simply to codify the doctrine that a Court of Appeals had power to sit *en banc, Textile Mills Corp.* v. *Commissioner,* 314 U. S. 326, while making clear that the usual procedure was to be decision by a three-judge panel.[1] It is not an unknown phenomenon in federal adjudication that a case, though heard by less than the entire tribunal, may be decided according to the majority vote of all. Cf. I. R. C., § 7460; see 2 Casey, Federal Tax Practice, 274–280. The traditional term, "heard and determined," in my view was designed to do no more than reflect the obvious inappropriateness of such a procedure to the deliberations of the Court of Appeals. There is no necessity for finding in that term, in light of the context in which it appears, any Congressional direction regarding the constitution of an *en banc* court.

The requirements governing the composition of an *en banc* court are found in the last sentence of § 46 (c). All it provides is that such a court shall not include retired

---

[1] The Reviser's Note to § 46 shows this to be true. "This section preserves the interpretation established by the Textile Mills case but provides in subsection (c) that cases shall be heard by a court of not more than three judges unless the court has provided for hearing in banc. This provision continues the tradition of a three-judge appellate court and makes the decision of a division, the decision of the court, unless rehearing in banc is ordered. It makes judges available for other assignments, and permits a rotation of judges in such manner as to give to each a maximum of time for the preparation of opinions."

circuit judges. The reason for such a provision is not hard to discern. Congress would hardly have required a retired circuit judge to return to the bench to attend at an *en banc* hearing and, as between leaving the matter to the discretion of the individual judge and limiting the court to active judges, it is not surprising—in view of the varying degrees of judicial activity of the retired judges, and the administrative undesirability of having, for these purposes, a court of unpredictable size and complement—that Congress should have chosen the latter course.

The language and context, then, of § 46 (c) are given full effect by holding, as I would, that the statute requires no more than that the members of an *en banc* court be in active status at the time the case is argued or submitted. Such a construction, for a court which decided the *Textile Mills* case, *supra,* should not be difficult to reach. The issue there was whether the predecessor of § 46 (c), conferring appellate jurisdiction on circuit courts consisting of three judges, prevented adjudication by a circuit court composed of five judges, constituting all the active circuit judges of the particular circuit there involved. In holding that it did not, the Court, making a wise "sacrifice of literalness for common sense," 314 U. S., at 334, found no difficulty in rising above the arithmetic of the predecessor of § 46 (c) so as to achieve a sensible result. Still less should there be difficulty here in accommodating § 46 (c) to the needs of sound judicial administration. So construed, the statute was complied with here.[2]

---

[2] The order granting the respondents' petition for rehearing *en banc* required that the case be submitted on written briefs, to be filed by Jan. 8, 1958. Judge Medina retired on Mar. 1, 1958. The action of the Judicial Conference in 1959, to which the Court refers (*ante,* p. 690, note 7), does not of course bear upon the narrow issue before us. That action was broadly directed to permitting retired circuit judges to sit on *en banc* courts in instances where they had sat on the panel originally deciding the case. Indeed, the recommendation of the Judicial Conference goes far to dilute the force of the Court's

But even were I to accept the Court's premises—a reading into the *en banc* procedure of a requirement that only active judges may participate in the "determination" of such cases, and a view of § 46 (c) as expressing a Congressional policy against participation by retired judges in decisions setting the "major doctrinal trends" of a court— I could not agree that they justify this decision. Choice of the date of announcement of a decision as the date of "determination" of the cause may provide a touchstone which a disappointed litigant searching for grounds for reversal can easily apply. However, it seems a singularly infelicitous construction of this particular legislative language.[3] "[L]aws are not abstract propositions. They are expressions of policy arising out of specific situations and addressed to the attainment of particular ends." Frankfurter, Some Reflections on the Reading of Statutes, 47 Col. L. Rev. 527, 533. The exact point of time when a case is "determined" is, as all informed lawyers know, a question whose answer varies from case to case, and which is known in a particular instance only to the judges themselves. Certainly, if an opinion—all argument, reflection, deliberation, and explication having been completed by a court composed of active judges only—is filed with the clerk of the court on the morning following the retirement of one of its members, no policy remotely discernible in § 46 (c) can justify a requirement that his vote in the case should not be counted. If any such policy can be thought to be reflected in the *en banc* statute, it should not be taken as requiring more than that a judge, whose retirement comes at a time when meaningful things in the

---

attribution to Congress of a design to leave in the hands of active circuit judges alone the setting of the "major doctrinal trends" of their courts.

[3] In construing a statute far more amenable to a technical approach, we recently rejected an analogous construction of the word "determined." *United States* v. *Price,* 361 U. S. 304, 307.

process of adjudication still remain to be done, must withdraw from further participation. But where such is not the case, the statute should not be thought to require a precipitous termination of judicial affairs and the undoing of adjudications properly made. In the nature of things the effectuation of such a policy should be left with the various Courts of Appeals, if indeed not to the conscience and good taste of the particular circuit judge concerned, as in most instances of individual disqualification for other reasons. Cf. 28 U. S. C. § 455.

It is not a ground for objection that such a construction would provide no test which an outsider, whether litigant or reviewing court, could apply.[4] As this Court has observed: "In our view, § 46 (c) is not addressed to litigants. It is addressed to the Court of Appeals." *Western Pacific Railroad Case,* 345 U. S. 247, 250. On its view of the statute the Court should not have hesitated to adopt that construction of the "heard and determined" clause which most faithfully reflects its purpose merely because those with whom the statute is not concerned are thereby hampered in voicing their own objections.

Indeed, while I need express no definite view on the question, since I regard the claim of noncompliance with § 46 (c) as untenable, I must say that the Court's opinion presents no substantial reason for permitting a litigant to overturn a judgment of the Court of Appeals through this sort of collateral attack on the competence of one of its members to sit. Had Judge Medina found in § 46 (c), as the Court holds he should have found, a statutory direction to withdraw from further participation in this

---

[4] In this case, one cannot say that such a standard was not followed. Although the decision was not announced until nearly five months after his retirement (265 F. 2d 136, 144), Judge Medina had sat on the panel which originally heard the case, and the briefs on reargument were submitted almost three months prior to his retirement. He did not write an opinion in the case.

lawsuit, petitioner and not respondents would have prevailed on the appeal, since that would have resulted in the affirmance, by an equally divided Court of Appeals, of the District Court's judgment in favor of the Government. Of course, to a litigant, there is no greater injury than to lose a case, but I have difficulty understanding just what legal error has been committed against petitioner, such as to warrant vacation by this Court of the judgment below, thus giving the Government an opportunity to retrieve its original loss in the *en banc* Court of Appeals. Clearly, Judge Medina was not a mere interloper, or a usurper. He was, and is, a circuit judge of the United States, bearing a commission signed by the President. Abstractions about "competence" only becloud the matter. All that has happened is that Judge Medina has exercised the right conferred by Congress (28 U. S. C. § 371 (b)) to retire from active service. Nothing in that action, or in what the Court has said concerning the scope of § 46 (c), renders the judgment of the court below vulnerable to attack. The cases cited by the Court dealt with disqualifications based on policy grounds the effectuation of which called for a vacation of the judgments rendered there.[5] No reason has been given why that is so here.

I would affirm.

---

[5] In *Frad* v. *Kelly*, 302 U. S. 312, a motion for discharge from probation was entertained and granted by a judge not of the district where sentence had been imposed. The evident purpose of the statute limiting consideration of such matters to judges of the sentencing court was to permit those judges to develop an integrated policy governing probation. *Id.*, at 318. To give effect to that policy, the order of discharge was vacated. The dictum in *American Construction Co.* v. *Jacksonville, T. & K. W. R. Co.*, 148 U. S. 372, 387, concerned a violation by a judge of the requirement that he not sit on an appeal from a judgment or order which he had entered. It hardly needs elucidation to recognize that disregard of such a policy infects the judgment rendered.