KAVANAUGH, Circuit Judge, with whom Circuit Judges HENDERSON and GRIFFITH join, dissenting: The en banc majority has badly erred in this case. The three-judge panel held that the U.S. Government, when holding a pregnant unlawful immigrant minor in custody, may seek to expeditiously transfer the minor to an immigration sponsor before the minor makes the decision to obtain an abortion. That ruling followed from the Supreme Court’s many precedents holding that the Government has permissible interests in favoring fetal life, protecting the best interests of a minor, and refraining from facilitating abortion. The Supreme Court has repeatedly held that the Government may further those interests so long as it does not impose an undue burden on a woman seeking an abortion. Today’s majority decision, by contrast, “substantially” adopts the panel dissent and is ultimately based on a constitutional principle as novel as it is wrong: a new right for unlawful immigrant minors in U.S. Government detention to obtain immediate abortion on demand, thereby barring any Government efforts to expeditiously transfer the minors to their immigration sponsors before they make that momentous life decision. The majority’s decision represents a radical extension of the Supreme Court’s abortion jurisprudence. It is in line with dissents over the years by Justices Brennan, Marshall, and Blackmun, not with the many majority opinions of the Supreme Court that have repeatedly upheld reasonable regulations that do not impose an undue burden on the abortion right recognized by the Supreme Court in Roe v. Wade.[1] To review: Jane Doe is 17 years old. She is a foreign citizen. Last month, she was detained shortly after she illegally crossed the border into Texas. She is now in a U.S. Government detention facility in Texas for unlawful immigrant minors. She is 15-weeks pregnant and wants to have an abortion. Her home country does not allow elective abortions. All parties to this case recognize Roe v. Wade and Planned Parenthood v. Casey as precedents we must follow. All parties have assumed for purposes of this case, moreover, that Jane Doe has a right under Supreme Court precedent to obtain an abortion in the United States. One question before the en banc Court at this point is whether the U.S. Government may expeditiously transfer Jane Doe to an immigration sponsor before she makes the decision to have an abortion. Is that an undue burden on the abortion right, or not? Contrary to a statement in the petition for rehearing en banc, the three-judge panel’s order did not avoid that question. The panel confronted and resolved that question. First, the Government has assumed, presumably based on its reading of Supreme Court precedent, that an unlawful immigrant minor such as Jane Doe who is in Government custody has a right to an abortion. The Government has also ■ expressly assumed, again presumably based on its reading of Supreme Court precedent, that the Government lacks authority to block Jane Doe from obtaining an abortion. For purposes of this case, all parties have assumed, in other words, that unlawful immigrant minors such as Jane Doe have a right under Supreme Court precedent to obtain an abortion in the United States. Second, under Supreme Court precedent in analogous contexts, it is not an undue burden for the U.S. Government to transfer an unlawful immigrant minor to an immigration sponsor before she has an abortion, so long as the transfer is expeditious. For minors such as Jane Doe who are in U.S. Government custody, the Government has stated that it will not provide, pay for, or otherwise facilitate the abortion but will transfer custody of the minor to a sponsor pursuant to the regular immigration sponsor program. Under the regular immigration sponsor program, an unlawful immigrant minor leaves Government custody and ordinarily goes to live with or near a sponsor. The sponsor often is a family member, relative, friend, or acquaintance. Once Jane Doe is transferred to a sponsor in this case, the Government accepts that Jane Doe, in consultation with her sponsor if she so chooses, will be able to decide to carry to term or to have an abortion.[2] The panel order had to make a decision about how “expeditious” the transfer had to be. Given the emergency posture in which this case has arisen, the panel order prudently did not purport to define “expeditious” for all future cases. But the panel order set a date of October 31—which is 7 days from now—by which the transfer had to occur. For future cases, the term “expeditious” presumably would entail some combination of (i) expeditious from the time the Government learns of the pregnant minor’s desire to have an abortion and (ii) expeditious in the sense that the transfer to the sponsor does not occur too late in the pregnancy for a safe abortion to occur.[3] In this case, although the process by which the case has arrived here has been marked by understandable confusion over the law and by litigation filed by plaintiff in multiple forums, the panel order concluded that a transfer by October 31—which is 7 days from now—was permissibly expeditious. This would entail transfer in week 16 or 17 of Jane Doe’s pregnancy, and the Government agrees that she could have the abortion immediately after transfer, if she wishes. Third, what happens, however, if a sponsor. is not found by October 31 in this case? What happens generally if transfer to a sponsor does not occur expeditiously? To begin with, a declaration we just received from the Government states:- “while difficult, it is possible to complete a sponsorship process for J.D. by 5 P.M. Eastern on October 31, 2017.” The. declaration also lists several ongoing efforts regarding the sponsorship process. The declaration adds that all components of the U.S. Government “are willing to assist in helping expedite the process.” But if transfer does not work, given existing Supreme Court precedent and the position the Government has so far advanced in this litigation, it could turn out that the Government will be required by existing Supreme Court precedent to allow the abortion, even though "the minor at that point would still be residing in "a U.S. Government detention facility. ■ If so, the Government would be in a similar position as it is in with adult women prisoners in federal prison and with adult womén unlawful immigrants in U.S. Government custody. The U.S. Government allows women in those circumstances to obtain an abortion. In any event, we can immediately consider any additional arguments from the Government if and when transfer to a sponsor is unsuccessful. In sum, under the Government’s arguments in this case and the Supreme Court’s precedents, the unlawful immigrant minor is assumed to have a right under precedent to an,abortion; the Government may seek to expeditiously transfer the minor to a sponsor before the abortion occurs; and if no -sponsor is expeditiously located, then it could turn put that the Government will be required by existing Supreme Court precedent to allow the abortion, depending on what arguments the Government can make at that point. These rules resulting from the panel order are consistent with and dictated by Supreme Court, precedeiit. The three-judge panel reached a careful decision that prudently accommodated the competing interests of the parties. . By contrast, ‘ under the panel dissent, which is “substantially” adopted by the majority today, the Government has to immediately allow the abortion upon the request of an unlawful immigrant minor in its custody, and cannot take time to first seek to expeditiously transfer the minor to an immigrant sponsor before the abortion occurs.[4] The majority seems to think that the United States has no good reason to want to transfer an unlawful immigrant minor to an immigration sponsor before the minor has an abortion. But consider "the circumstances here. The minor is alone and without family or friends. She is in a U.S. Government detention facility in a country that, for her, is foreign. She is 17 years old." She is pregnant and has to make a major life decision. Is it really absurd for the United States to think that the minor should be transferred to her immigration sponsor—ordinarily a family member, relative, or friend—before she makes that decision? And keep in mind that the Government is not forcing the minor to talk to the sponsor about the decision, or to obtain consent. It is merely seeking to place the minor in a better place when deciding whether to have an abortion. I suppose people can debate as a matter of policy whether this is always a good idea. But unconstitutional? That is far-fetched. After all, the Supreme Court has repeatedly said that the Government has permissible interests in favoring fetal life, protecting the best interests of the minor, and not facilitating abortion, so long as the Government does not impose an undue burden on the abortion decision. It is important to stress, moreover, that this case involves a minor. We are not dealing with adults, although the majority’s rhetoric speaks as if Jane Doe were an adult. The law does not always treat minors in the same way as adults, as the Supreme Court has repeatedly emphasized in the abortion context. - The majority points out that, in States such as Texas, the minor will have received a judicial bypass. That is true, but is irrelevant to the current situation. The judicial bypass confirms that the minor is capable of making a decision. For most teenagers under 18, of course, they are living in the State in question and have a support network of friends and family to rely on, if they choose, to support them through the decision and its aftermath, even if the minor does not want to inform her parents or her parents do not consent. For a foreign minor in custody, there is no such support network. It surely seems reasonable for the United States to think that transfer to a sponsor would be better than ■forcing the minor to make the decision in an isolated detention camp with no support network available. Again, that may be debatable as a matter of policy. But unconstitutional? I do not think so. - The majority apparently, thinks that the Government must allow unlawful immigrant minors to have an .immediate abortion on demand. Under this vision of the Constitution, the Government may not seek to first expeditiously transfer the minor,to the custody of an immigration sponsor before she has an abortion.[5] The majority’s approach is radically inconsistent with 40 years of Supreme Court precedent. The Supreme Court has repeatedly upheld a wide variety of abortion regulations that entail some delay in the abortion but that serve permissible Government purposes. These include parental .consent laws, parental notice laws, informed consent laws, and waiting periods, among other regulations. Those laws, of course, may have the effect of delaying an abortion. Indeed, parental consent laws in practice can occasion real-world delays of several weeks for the minor to decide whether to seek her parents’ consent and then either to obtain that consent or instead to seek a judicial bypass. Still, the Supreme Court has upheld those laws, over vociferous dissents. See, e.g., Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 582, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (Black-mun, J., joined by Brennan and Marshall, JJ., dissenting) (“Ohio’s judicial-bypass procedure can consume up to three weeks of a young woman’s pregnancy.”) (citation omitted); Hodgson v. Minnesota, 497 U.S. 417, 465, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (Marshall, J., joined by Brennan and Blackmun, JJ., dissenting) (“[T]he prospect of having to notify a parent causes many young women to delay their abortions.... ”); H.L. v. Matheson, 450 U.S. 398, 439, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (Marshall, J., joined by Brennan and Blackmun, JJ., dissenting) (“[T]he threat of parental notice may cause some minor women to delay past the first trimester of pregnancy....”). To be sure, this case presents a new situation not yet directly confronted by the Supreme Court. But that happens all the time. When it does, our job as lower court judges is to apply the precedents and principles articulated in Supreme Court decisions to the new situations. Here, as I see it and the panel saw it, the situation of a pregnant unlawful immigrant minor in a U.S. Government detention facility is a situation where the Government may reasonably seek to expeditiously transfer the minor to a sponsor before she has an abortion. It is undoubtedly the case that many Americans—including many Justices and judges—disagree with one or another aspect of the Supreme Court’s abortion jurisprudence. From one perspective, some disagree with cases that allow the Government to refuse to fund abortions and that allow the Government to impose regulations such as parental consent, informed consent, and waiting periods. That was certainly the position of Justices Brennan, Marshall, and Blackmun in many cases. From the other perspective, some disagree with cases holding that the U.S. Constitution provides a right to an abortion. As a lower court, our job is to follow the law as it is, not as we might wish it to be. The three-judge panel here did that to the best of its ability, holding true to the balance struck by the Supreme Court. The en banc majority, by contrast, reflects a philosophy that unlawful immigrant minors have a right to immediate abortion on demand, not to be interfered with even by Government efforts to help minors navigate what is undeniably a difficult situation by expeditiously transferring them to their sponsors. The majority’s decision is inconsistent with the precedents and principles of the Supreme Court—for example, the many cases upholding parental consent laws—allowing the Government to impose reasonable regulations so long as they do not unduly burden the right to abortion that the Court has recognized. This is a novel and highly fraught case. The case came to us in an emergency posture. The panel reached a careful decision in a day’s time that, in my view, was correct as a legal matter and sound as a prudential matter. I regret the en banc Court’s decision and many aspects of how the en banc Court has handled this case.[6] I respectfully dissent. . The minor of course also has to satisfy whatever state-law requirements are imposed on the decision to obtain an abortion. . To be clear, under Supreme Court precedent, the Government cannot use the transfer process as some kind of ruse to unreasonably delay the abortion past the point where a safe abortion could occur. . The majority’s order -denies' the Government's emergency motion for stay pending appeal and thus does not .disturb the District Judge’s injunction (with adjusted dates), which required the Government to facilitate an immediate abortion for Jane Doe. Therefore, unless the Government can somehow convince the District Judge to suddenly reconsider her decision, which is extremely unlikely given’ the District Judge's prior ■ ruling on this, matter,, the majority’s order today necessarily means that .the Government must allow an immediate abortion while Jane Doe remains in Government custody. . The precedential value of the majority’s decision for future cases is unclear and no doubt will be the subject of debate; But one limit appears clear and warrants mention; The majority’s decision requires the Government to allow the abortion'even while the minor is residing in Government custody, but it does not require the Government to pay for the abortion procedure itself. The Government’s policy on that issue remains undisturbed. . The Court never should have reheard this case en banc in the first place. As the Supreme Court has instructed, "En banc courts are the exception, not the rule. They are convened only when extraordinary circumstances exist that call for authoritative consideration and decision by those charged with the administration and development of the law of the circuit.” United States v. American-Foreign Steamship Corp., 363 U.S. 685, 689, 80 S.Ct. 1336, 4 L.Ed.2d 1491 (1960). Federal Rule 35 provides that rehearing en banc is reserved for cases that involve "a question of exceptional importance.” This Court’s judges have adhered to that principle, even while entertaining doubts about a panel’s application of the law to individual litigants. Here, on the law, the three-judge panel's order was unpublished; therefore, it constituted no legal precedent for future cases. As to the facts of this one case, if the panel’s order had blocked Jane Doe from obtaining an abortion, the en banc consideration might be different. If the panel’s order had forced Jane Doe to the cusp of Texas’s 20-week abortion cutoff, the en banc consideration might be different. If the panel’s order had significantly delayed Jane Doe’s decision, the en banc consideration might be different. But the panel’s order did none of those things. The panel was faced with an emergency motion involving an under-developed factual record that is still unclear and hotly contested. Indeed, the parties have submitted new evidence by the hour over the past two days—none of which was presented to the panel. The panel’s unpublished order recognized Jane Doe’s interests without prematurely requiring the Government to act against its interests. The panel decision was prudent and reasonable, given all of the circumstances. Indeed, as noted above, the Government represents that, while difficult, it is possible for Jane Doe to obtain a sponsor by "5:00 P.M. Eastern on October 31, 2017.” This case, as handled by the three-judge panel, therefore was on a path to a prompt resolution that would respect the interests of all parties— until the en banc Court unwisely intervened. This case did not meet the standard for rehearing en banc.